Benjamin T. Andersen
101 SW Madison #9068
Portland, Oregon  97207
t. 503.860.2531
bta@btandersen.com

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br>v.<br>Geoffrey STANEK,<br>            Defendant. | Case No. 3:16-CR-051-BR-23<br><br>SENTENCING MEMORANDUM—<br>Geoffrey Stanek |

## I. RELEVANT PROCEDURAL BACKGROUND

On February 12, 2016, Geoff Stanek was arraigned.  ECF 34.

On June 15, 2016, Mr. Stanek entered a plea of guilty to the felony charge of Conspiracy to Impede Officers of the United States.  ECF 702.

On October 27, 2016, a jury acquitted seven members of the alleged conspiracy, including the putative leaders Ammon and Ryan Bundy, on all relevant counts.  ECF 1508.

On February 6, 2017, three members of the conspiracy entered pleas of guilty to the misdemeanor charge of trespassing, and all felony charges were dismissed against those defendants.  ECF 1820, 1825, 1827.  These defendants were sentenced to one year of probation and $1000 in restitution.  ECF 1837, 1868, 1870.

On March 10, 2017, a jury returned verdicts of guilt against two defendants on charge of Conspiracy to Impede Officers of the United States, and returned verdicts of not guilty against two other defendants on the same charge.  ECF 2010-13.

Many defendants moved to withdraw their guilty pleas at one point or another.  Mr. Stanek did not.

## II.     MR. STANEK SHOULD NOT BE SENTENCED TO A HARSHER PENALTY THAN THOSE DEFENDANTS WHO WERE ALLOWED TO PLEAD TO A MISDEMEANOR

18 USC § 3553(a)(6) directs a sentencing court to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  This court does not have the power to *sua sponte* reduce Mr. Stanek's charge to a misdemeanor, and the US Attorney has declined Mr. Stanek's request to reduce his post-plea, pre-sentence charge to a misdemeanor.  §3553(a)(6), however, suggests that this court should impose a sentence no more severe than the sentences imposed on other defendants, some of whom have *worse* records and arguably have *more* culpability in the overall offense than Mr. Stanek.  *See Gall v. United States*, 128 S.Ct. 586, 599-600 (2007) (discussing application of §3553(a)(6) in relation to co-defendant sentences).

Undersigned counsel's review of the record indicates that Mr. Stanek's conduct in the above-captioned case is of a no more severe nature than that of co-defendants Sean Anderson, Sandra Anderson and Dylan Anderson, all of whom were allowed by the government to plead guilty to misdemeanors prior to the second trial and were sentenced to one year of probation and $1000 of restitution.  ECF 1837, 1868, 1879.  Unlike Mr Stanek, those three defendants were present from the beginning of the standoff, and were

involved in the initial takeover.  See PSR at ¶ 26.  Mr. Stanek was allowed by the FBI to leave on his own accord, whereas Dylan Anderson was arrested at the Refuge on January 27, 2016.  PSR at ¶ 37.  Sean and Sandra Anderson did not voluntarily leave and instead held out in an armed standoff at the refuge until February 11, 2016.  For those last two weeks, Sean Anderson made a variety of violent and specific threats against law enforcement that were broadcast on YouTube.

Mr. Stanek, as mentioned above, was not present at the beginning of the takeover, and left voluntarily after many of the leaders were arrested.  He was arrested without incident on February 11 in Forest Grove, OR, while legally open-carrying a pistol.

To avoid unwarranted sentencing disparities in this case, Mr. Stanek asks this Court to impose a sentence of one year of probation without the imposition of a term of home detention.  Other factors at 18 USC §3553(a) support such a sentence, as well.

### A.    MR. STANEK'S HISTORY AND CHARACTERISTICS SUPPORT A PROBATIONARY SENTENCE

As related in the PSR, Mr. Stanek is an honorably discharged veteran of the US Army.  He has no prior criminal history.  He worked as a security guard after being discharged from the Army and was in the process of becoming a firefighter when he responded to the Refuge.  Since his arrest, he has worked at various jobs but has had some difficulty finding employment due to the pending felony conviction.

Mr. Stanek has reported regularly and has not had any significant problems while on pretrial release.  He is a good candidate to successfully complete a probationary sentence.

### B. THE CIRCUMSTANCES OF MR. STANEK'S INVOLVEMENT IN THE OFFENSE SUPPORT A PROBATIONARY SENTENCE

Mr. Stanek went to the Refuge in early January after learning about it from a Facebook group that a former coworker had showed him. He had a very vague understanding of what was actually happening at the Refuge before travelling out to lend support to what he understood was a constitutional protest. A main reason he decided to go was that he believed the medic skills that he had learned during his time in the United States Army could be of use. As he understood it from Facebook, the situation could escalate, and medic skills could be important.

Once he got to the Refuge, Mr. Stanek quickly fell back on his military training. He took orders from the leadership that was already set up and fit into the quasi-military structure that already existed at the Refuge. Once he had joined into that structure, he quickly came to feel that he could not abandon his new compatriots. Regardless, he did not have enough money for gas to leave anyway, and was too embarrassed to ask for help from his family or from others at the Refuge. He did not have any plan on how long he intended to stay, but after Ammon Bundy and others were arrested on January 26, Mr. Stanek—along with many other people—left the Refuge. The FBI, who controlled entry and exit, did not detain Mr. Stanek. Mr. Stanek travelled back home with another person who had money for gas but no car.

/////

## C. A FELONY CONVICTION REFLECTS THE SERIOUSNESS OF THE OFFENSE, WILL PROMOTE RESPECT FOR THE LAW, AND WILL PROTECT THE PUBLIC FROM FURTHER CRIMES

Mr. Stanek has no prior criminal history. A felony conviction has already affected him greatly and will continue to affect him for the rest of his life. Beyond the social stigma that attaches to being labeled a felon, Mr. Stanek will no longer be able to exercise his Second Amendment right to bear arms, and his ability to vote could be curtailed in certain jurisdictions. These are severe punishments. A probationary sentence will also substantially limit Mr. Stanek's general freedoms, much the same as his freedoms have been curtailed for the nearly year-and-a-half that he has been supervised on pretrial release. *See Gall*, 128 S.Ct. at 595-96 (discussing the substantial restriction of liberty inherent in a probationary sentence).

There is no indication that Mr. Stanek will perpetrate any further crimes. He was the third defendant to accept responsibility for his actions and enter a plea of guilty. ECF 702. He has shown himself to be consistently responsive to pretrial supervision. A probationary sentence would allow him to continue this trend and could potentially provide him with the ability for any vocational training in the most effective manner.

## III. ONE YEAR OF PROBATION IS SUFFICIENT

Mr. Stanek left the Refuge on his own accord and was peacefully arrested two weeks later. He has had no problems on pretrial release and has no prior criminal history. He was honorably discharged from the US Army and is a good candidate to successfully complete a term of probation. A probationary sentence of one year with no imposition of

any further sanction is sufficient, but not greater than necessary to comply with the provisions of 18 USC 3553(a)(2).

    Respectfully submitted this 21st day of June, 2017.

                                                             Benjamin T. Andersen, OSB 06256